On behalf of the F1, Mr. Norman Larum, on behalf of the F3, Ms. Dianne Soblak. Good morning, counsel. Justice Bowman is on this panel. He was unable to be here today, but he will review the recordings of this before we render a decision. Mr. Larum, may I proceed? Good morning, your honors. My name is Norman Larum. I represent the appellant, Lisa Carlson, in this matter. I would like to reserve five minutes for rebuttal, and I'm not quite sure how the timing system works. It's already reserved. Okay, all right. Thank you, Judge. May it please the Court, the principal issue on appeal is whether or not the Trump Court handling the forcible entry detainer action erred by striking the affirmative defense asserted by Ms. Carlson, challenging the association's right to take possession of her condominium unit under the forcible entry and detainer statute and to collect the assessments. And the allegations which must be presumed to be true in the affirmative defense were that Ms. Carlson had notified the association for several years about a water infiltration problem in her fourth floor unit, and there are only four floors to this building in Highland Park. The water had infiltrated the ceiling as well as the top of the walls surrounding most of her unit. The allegations are very specific. The allegations point to a meeting held in her unit several years ago on a specific date with a property management representative of the property management company and a contractor where they determined that the water infiltration, which was first spotted at that time or close to that time, was coming from the roof or from some other brick structure on the outside. This is a problem that my client, who's been there for 14 or 15 years, cannot solve. Did she have an attorney that was consulting her during that period of time? No, she did not. She could have brought an action for a breach of contract at that time, correct? Well, I mean, I suppose, but I mean, I mean, how many, I mean, her attempt at that time was to notify and to ask that the association fulfill their duties. I mean, most people don't want to run to a lawyer and be litigious at that time, at least, and bring a breach of contract action or bring an injunction action when it's the duty of the association to spot the problem and then move forward with a way of remedying the problem as is required in the declarations. But yes, I suppose, you know, I mean, anybody can go to court and make that allegation, but I think from a public policy standpoint, what she did was the right thing in terms of trying to resolve the matter informally. But the allegations are, in the affirmative defense, that even though there was a meeting, an inspection, notice, a determination that the infiltration of water was coming from an outside source and that a promise that there would be remedy, it wasn't. And, of course, what happened is, as the plea was noted below, Ms. Carlson was thrown from an elevator around that time, suffered serious injuries, filed a personal injury action. That action was litigated for several years and then finally settled during the course of trial. She did file a counterclaim in this case seeking money damages for the damages to her. She did, and that's been severed. That was severed. It was severed. And I know you do argue that. Do you strenuously argue that that should not have been severed from this forcible case? Yes. At the time, under the Rosenwood case, which is the only Supreme Court case addressing what affirmative defense is germane to a forcible entry detainer, the court makes, I think, a pretty strong statement that all these issues for judicial economy reasons should be tried together. And I did make that argument to the trial court, and I did make that argument on appeal. As time has moved on, that case is before Martyr Mullen. We've had a number of motions and status hearings. Discovery is now ongoing in that case. I still think it would be more efficient. It's not as compelling as it was before because now there's been a lot of procedure before one judge on that counterclaim. We have a trial date in October. In terms of a remand, I think it would be maybe more efficient if the case were remanded to remand on the affirmative defense, which would be proper, and to try the forcible entry detainer action with the affirmative defense. Because I think the affirmative defense, if upheld, would bar, stop the association from collecting the assessments in a certain period of time and, of course, bar their right to possession. The essential element here, and Gettysburg wasn't important until there was a battle fought in the Civil War. I mean, the essential issue here, which is really important in my view in the landscape of condominium law, is that this is not a one-way street. This is a two-way street. These boards, and the reality today is that many times condominium buildings have investors, and the boards are populated by people who have investments in the building who don't live there. But they have obligations to maintain the common areas. As a matter of fact, in Pelley's brief, there's a section where they cite the act that there really are no limits or constraints under the Illinois Condominium Act for repairs mandated by law. Well, repairing a roof is a duty mandated by law. And so there are no limits on spending or ownership approval with respect to that type of repair. And if the proof is, as we assert it is, and I believe it is, that we have had a problem here affecting one homeowner, there's a history, unfortunately, of disagreement between this homeowner and the association. But that doesn't alleviate or it doesn't relieve the association of their duties to repair this water infiltration problem, which has substantially damaged Ms. Carlson's unit. She can't sell it. That's part of the case in the counterclaim. I mean, it's a mess. Is her remedy to withhold assessment famous? Well, Judge, that's what she did. I mean, this is a way she could get attention. I mean, this is exactly what she did. What about special assessments that were earmarked toward things like patio doors or whatever? I mean, is that also a remedy to get the, you know, I understand the argument toward the general assessment, which goes toward the common element. To the common fund, right. Sorry, for the maintenance of the common elements, excuse me. Right. Well, on the patio door, I mean, our argument is that. I don't even really want to hear that argument right now. I'm just saying, though, is it her remedy? And I understand your argument that perhaps that's a remedy to withhold the general assessments. But we have special assessments that aren't going toward roofs and repairs. And there's less of an argument there. There's less of an argument. If you prevail on the affirmative defenses, then that issue is going to be re-litigated anyway. There's no question. That's right. There's no doubt about that. On the patio door, our position was that in order for the board to have the authority, goes to the authority of the board, before the board can enact a special assessment under the new statute, they've got all the power in the world. And I'm going to talk about that backdoor provision just in a second. They've got to have the authority under the declarations. And a patio door doesn't fall within the definition of a common element or a limited common element because it's inside the unit. It's not a perimeter. And there's a section right in the dex that says anything inside the unit is the responsibility of the unit owner. Isn't the patio door on the exterior wall? No, it's not. Well, it's on an inside track. Okay. It's right inside. Inside track of the exterior wall. Well, yes. It's like most patios you've seen. Exactly. You can go outside and they're outside. Exactly. But it's not a perimeter in the building. Regarding your argument on damages that your counterclaim should have proceeded with that action, where do you draw the line? Could you bring an action for personal injury, for example, a protruding nail? No. I think it's a good question, and I want to address that. I don't believe that this case would open a floodgate. It would not allow, because the case law is there. The statute is there. The statute says that the affirmative defense needs to be germane to the right of possession. And a personal injury action or if somebody says, well, gosh, you didn't fix this little crack in the wall over here, that really doesn't relate. It's not germane to the association's right to possession. This is fundamental. I mean, there's a water infiltration that has significantly damaged her unit over a significant period of time after notice, after repeated requests. What if your damages exceed the assessment? In other words, your damages are much greater than the assessment owed, then it doesn't go merely to possession. You're asking from then, possession and then some, correct? That's why there was a counterclaim. Well, and that's why it was severed. That's correct, Judge. The counterclaim was severed for that reason, except that we don't believe, and this is the contract issue, this is the issue, that the association, any association that breaches its duty when it knows that it has a duty to repair a common element affecting and damaging a homeowner's unit, when it breaches that duty, it doesn't have the right to collect the assessments. So in that, if the case is remanded and we go back and Lisa Carlson prevails, then this money judgment which has been entered should be vacated and there should be a declaration and a finding that they breached, the association breached its duty and cannot collect and cannot have possession of the unit until they remedy the problem, which is their duty. And it's so well established under the law that associations or developers of condominium buildings have a duty, an absolute duty to repair the roof to prevent this very problem from happening. I mean, it's just almost incongruous to believe that there's an absolute duty to collect assessments for the repair of common elements and yet in this kind of a case where there's evidence and allegations that they have refused to do that, that they can then say, well, we get our money and we get your unit too and we can throw you out. It just, there's nothing more germane to the right of possession than this situation. You know, the cases I was looking at for the most part had to do with leasehold interests. Is there any difference because this is a condo? I think there is. I mean, when we're talking about affirmative defenses. Oh, I think there is. I think there is because Ms. Carlson owns it at Fee Simple. I mean, this isn't a landlord-tenant dispute where the landlord owns the property at Fee Simple and the tenant is really a tenant under a lease or a tenant at Sufferance. The tenant doesn't own the property. Ms. Carlson has an investment, a long-term investment and a mortgage, what's left of it, in this unit. It's her home. So your argument is she's in even a stronger position than a tenant would be in a leasehold? There's no question. And, you know, I mean, I've done a little bit of work for clients under the Chicago landlord-tenant ordinance and surprisingly, even though people would say that's a more tenant-oriented ordinance, there are similar provisions in the Chicago ordinance as a matter of public policy which allow a tenant to refrain from paying rent if the landlord violates, you know, certain portions of the ordinance, some of which relate to things like water infiltration and leaking roofs. So as a matter of public policy, you know, I mean, this is sound public policy in terms of placing the burden on the party responsible to remedy defects and common elements that are causing damage to a condominium unit owner's property. So, I mean, and so that's to answer your question. There's a difference between this situation. She's in a stronger position. She owns it in fee simple. With respect to just one more point, and I know my time's probably out. With respect to the cross appeal, I just want to point out that I tried this case below. There was no evidence presented that the special assessment relating to the elevator was ever mandated by law. I mean, there was no testimony to that effect at all. And so the argument on appeal, I think, is a new contention, a new argument. I didn't face that as a trial lawyer. The trial judge didn't hear it. And with respect to the backdoor procedure, yes, the statute has changed the law. I think the statute, which is not an issue here, I don't think it is, provides now for the burden to be shifted to homeowners. Once the board passes a special assessment, it doesn't have to obtain a percentage of vote from the ownership any longer, which I think is wrong, but that's just my personal opinion. I think the law should be changed. And so with the backdoor provision, what the brief doesn't tell you is that it's a window that's open for 30 days, and that's it. So if the homeowners, a lot of them aren't there, if it's a big building, they've got to go knock on doors and scurry at people and organize and get everybody together within 30 days to pass a vote to challenge sometimes very large special assessments. I mean, the statute is very pro-board. Well, that's an argument to be made in Springfield, not here. Exactly. Yeah, but I just wanted to raise it. I agree with you. Right. All right, Counselor, your time is up. Thank you. You have time for rebuttal. Thank you. Thank you. Ms. Silverberg, you may proceed. Good morning, Justices. If it pleases the Court, Diane Silverberg on behalf of the Appellee, the Cross Appellant, Spanish Court II, Condominium Association. On the issue of the affirmative defenses, there are a number of things that I think are critical to raise with respect to the argument that was made by Counsel moments ago, as well as in response to the questions that you've raised. And what I think is critical to underscore is that the Forcible Entry and Detainer Act is intended to be a summary statutory proceeding, and the law makes that clear. The Sawyer case, which the parties both cited in their briefs, talks about and is somewhat derisive of the fact that the defenses raised in that case involved breach of contract and tort claims, much as what we're discussing here. And the Court found in that case that those were not germane defenses and that properly they could not be raised in response to a forcible entry and detainer action. Not germane to the issue of possession. In that case, the person already left the house. They didn't contest possession. Correct, Your Honor. Although, if you take a look at the counterclaim that is actually asserted here, as well as the affirmative defenses, because the facts asserted are identical, it's clear that what they're seeking is, in essence, a remedy for a breach of contract and that it's not calling into question the retaliation issue. Why is it not an affirmative defense to your count two, which is captioned breach of contract? Your Honor, the issue before you is on the issue of possession, respectfully. And as to that issue and the Forcible Entry and Detainer Act question, it's clear under the law that's been established in any number of the jurisdictions in which the parties have cited that it's intended to be a summary statutory proceeding. And if we open it up to affirmative defenses, the summary proceeding, and as I'm sure the courts are aware, there are a myriad of these claims that are brought every day in the trial courts. If we open the floodgates to allowing the parties to assert defenses such as these and no longer limit the affirmative defenses to those that the courts have deemed to be germane, these will no longer be summary proceedings. And I think it's clear that that was the intention of the legislature in making it such. Isn't this, and how do you distinguish this case from landlord-tenant cases where the courts have held permitted the tenant to allege implied warranties of habitability, etc.? Why is this not akin to that where you have the declaration of promise by the association to maintain repairs on the common elements? Isn't that germane to possession? Well, I think that there are a couple issues. One is, and what struck me as I was listening to argument and answer to your questions, is the catch-22 that's created here. The unit owners have an obligation to pay the assessments. Repairs and other such things only occur when the payments are made. So what we have here is counsel saying, I want the repairs made, but I'm not going to pay for them. I mean, it's not as though there's a pot of money there that somehow magically pays for the repairs. If this unit owner, if other unit owners choose not to pay their assessments, it doesn't get done. Her complaint, though, from her defense is that she did promptly notify and that she began withholding when there was no action taken. Well, and I think that the facts as alleged do indicate that there were steps taken. It's just that they weren't successful, but it continued over time. The association board, as much as it might like to be, cannot be the guarantor of the work that gets done. I mean, they have to continue to try to find a solution. And I think that the facts as alleged and established demonstrate that they tried. But certainly, if there is no payment of assessments, you can't get to the repairs. You just said that the facts established that they did, but there were no facts because the affirmative defenses were stricken. Isn't that the point? Isn't there an exchange of promises? You pay the assessments, and we will maintain the common elements. If you don't maintain the common elements, I'm not paying my assessments. Isn't that really what's going on here? Your Honor, I think the difficulty is that the intention of the Forcible Entry and Detainer Act is to be summary. And I think that that is the fundamental issue before us. If we decide, or if you decide, contrary to my urging, that the defenses can be expanded to assert anything, any sort of breach, whether it be of contract, of a tort, some sort of breach of duty, then these are no longer summary proceedings. And there has been a determination made by the law and the state that it is going to be conducted as a summary proceeding. Anything, I mean, defenses would be anything, not just anything in the world, but anything that's germane to possession. And we look to the case law on the leasehold cases, such as Quell and Richardson and Jack Straw or whatever, Jack Spring. Those cases talk about withholding payment for breaches of implied warranties of habitability. Here we don't have an implied warranty. We have an express contract between the parties. It's not an implied warranty, an express contract to do these things. And we have a breach of that. And those cases talk about, you know, if you're not paying your rent because there's a breach of the implied warranty of habitability, that that's at least presented, can be presented to the court in this, again, summary proceeding. I understand that concept. But those cases were supposedly summary proceedings, too, and they said that the courts improperly struck the affirmative defense. And what I think is fair to assert in that respect is I disagree with counsel on this particular issue. I think that the bargaining position and strength of an owner is stronger than it is for a tenant and that the protections are greater, given the relative balance of power. And if they are left without an ability to turn on the electricity, for example, they have certain remedies. I think a unit owner is more powerful, and that's the reason for the discrepancies between the way that the law has shaken out on that particular issue. There are no cases on this, either. Did you find any cases on candles? Not that I can find. Only those cases that talk about and give examples for what constitutes something that's germane. And the particular case that was cited by Carlson, for example, this Rosewood case, talks about how they were overcharged based on their race. I mean, that's clearly a situation where it was pretextual. Here, if you follow the facts that were asserted in the affirmative defenses and in the counterclaim, it seems clear that what they're asserting is a breach of contract or a breach of some sort of duty. And given the language in the Sawyer case, for example, that says this is not a germane action, then I think that the trial court decided properly here in striking the affirmative defenses and severing the counterclaim, which, as counsel has indicated, is proceeding. Just if I could touch briefly on the other issues, I think that the patio door issue, frankly, is a non-issue, as Justice Burkett has indicated. I mean, the patio door is just as you envision it. The definition of what constitutes a limited common element in the declaration both and in the act make clear and encompass the definition of the patio door to include it as a limited common element. I understood counsel to concede that the law has changed with respect to the $300 limit and that the issues that he's raising are really his personal belief about whether it's feasible or not to protest an assessment that exceeds the 115% of the prior year's special and general assessments. But as you pointed out, that's not properly, with all due respect, an issue that I think is to be raised in this proceeding. Separately, we have the issue of the attorney's fees and fees for late payment of assessments. And as to those issues, again, we believe that and have stated in our briefs that the act both and the declaration provide for those remedies. The act very clearly allows for recovery of attorney's fees. And the case of Hidden Grove v. Crooks, which I've cited to you, found that a $25 late fee is per se reasonable. And that is the same late fee that was charged here. So I would submit respectfully that that was appropriate. The only place where we part company with the esteemed trial court is with respect to Carlson's failure to pay special assessments. As to the elevator and the fire panel in particular. And we would submit that in that respect only the trial court erred and exercised an abuse of discretion in that regard. The evidence shows that the board members did in fact pass it. We would respectfully submit to the court that requiring something to come up to code such as a fire elevator panel or the fire code is something that would be deemed properly to be mandated by law. Was that passed pursuant to the declaration and bylaws? It seems like the trial court ruled that it was not. What I would submit in that regard is that the Illinois Condominium Property Act has a number of provisions that under which the board does not need to take a vote of the association membership. And we have cited to a couple of the things. One is that the limits on the amount that can be approved for various expenditures are inapplicable where it pertains to the repair, replacement, or restoration of the common elements. And in this instance, the trial court did acknowledge, at least with respect to the fire alarm panel, that the special assessment was for the replacement of that item. So I would submit, at least as to that item, the limitation on the amount that can be spent should not be deemed to prevent this expenditure from having been assessed against her as a special assessment because it did fall into the caveat under the Act for Repair, Replacement, or Restoration. Counsel argues that some of these arguments that you're making in your brief and not today were not raised in the trial court. Well, and as to that, we have cited a case in our reply brief that I think is apropos here. The policy, first of all, it's within the discretion of the appellate court as to whether you want to hear it or not. It's a restriction on me, but not a restriction on you. But more importantly, the policy behind that is so as not to surprise the other side and to make sure that they had an opportunity, if an opportunity existed, to raise arguments that they might have had with respect to that. And the transcript shows that arguments were made with respect to these issues in the trial court proceedings. So they weren't deprived of an opportunity to speak to those issues. And I think that the trial court's acknowledgment of the fact that this was a repair and the plain language of the Act properly should allow it to have been approved in the manner that it was. Additionally, there was, as I mentioned in my brief, the argument that the special assessment was included in the annual budget and under Section 1888 of the Act, if it's included in the budget, then there's no basis for protest. It doesn't require that there had been a vote. So for those reasons, respectfully, we ask that those judgments of the trial court that were in favor of the association be affirmed, that those two items as to the elevator panel and the fire alarm panel be reversed, and that if we prevail, that we be allowed such additional attorney's fees as are incurred in connection with this appeal. Thank you very much for the argument, Mr. Silverberg. Mr. Laird, you may proceed. Just a few quick points, Your Honor. I'll start from the bottom up. With respect to the trial court disallowing the elevator special assessment, I think the transcript will reflect the trial court held that the board didn't even follow its own procedures with respect to proper notice to the homeowners or even reflect proper minutes with respect to a vote. So there were procedures that the trial court focused on and said, even under your own declarations, even under the new statute, the proper procedures were not followed, and that's why I'm not going to allow it. So there were other reasons the trial court gave right on the record as to why he would not allow it. With respect to the patio door, in the reply brief, I believe I go to the section that defines it. It's at page 5 of the Carlson reply brief. The section in the condominium declaration is defining what a perimeter wall, floor, door, window, vestibule, entryway is. It's something that lies outside the unit boundaries. This door is within the unit boundaries. It's not outside the unit boundaries. And that's the basis of the appeal. And as I indicated, it came out in the record that a lot of homeowners still refuse to allow this door to be replaced in their units, and there's still a lot of controversy about it because of the authority. It's not clear in the declaration as to the authority. And if the board doesn't have a clear basis for authority, it cannot act. With respect to attorney's fees, I think our position is clear. If the claim by the association has no merit or if it's reversed because the affirmative defense wasn't considered and tried, then the attorney's fees award must also be vacated. It's that simple. It's just the same as any other type of attorney's fee award that's tacked on to a judgment or any judgment based on a meritorious claim. If the claim is vacated, the award for attorney's fees is vacated as well. With respect to the forcible entry and tainter of proceeding, sure, it's summary.  But the statute itself provides that some defenses may be raised. The statute itself allows for it. And those defenses must be germane in one of the four elements or one of the four accepted ways an affirmative defense is germane is if it challenges the contract that is the basis that the prosecuting party is relying upon for possession. A landlord says, I've got my lease, you haven't paid the rent, I want my building back. If the affirmative defense challenges that contract or the enforceability of that contract, it's germane. That's the situation here. We've got an exchange of promises. We've got a declaration. We have a unit owner who owns it in fee simple and says you're not entitled to possession of my unit until you finally stop that water infiltrating into my unit, which is part of your duties. It's germane. It goes right to the enforceability of the contract that the association is claiming forms its basis for possession of my client's unit. Judge, thank you. Judge, thank you very much for your time today. I want to thank both attorneys for their arguments today. We will take the case under advisement with the decision. Of course, we are in recess.